**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

LUZ MARIA ACEVEDO VARGAS,
et als.,

          **Plaintiffs,**

          **vs.**

GUMERSINDO COLON, et als.,

          **Defendants.**

**CIVIL NO. 96-2102 (DRD)**
**CIVIL ACTION FOR**
**VIOLATION OF CIVIL RIGHTS**
**UNDER 42 USC SECS. 1983 AND**
**12,111 et. seq.**

## OPINION AND ORDER

Pending before the Court is Co-defendant's, Municipality of San Juan ("MSJ"), Motion For Summary Judgment (Docket No. 34), which Plaintiffs, Luz María Acevedo ("Acevedo")and others, opposed (Docket No. 39). MSJ filed a Reply (Docket No. 42) to Plaintiffs' opposition. Thereafter, Plaintiffs filed a Surreply (Docket No. 45). For the succeeding reasons, Co-defendant's Motion For Summary Judgment is hereby **GRANTED.**

## I. BACKGROUND

Plaintiffs filed this civil action for money damages for violation of civil rights under 42 U.S.C. § 1983; 42 U.S.C. § 12.111 et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; Puerto Rico Law 17, P.R. Laws Ann. tit. 29 § 155 et seq. (1988); Puerto Rico Law 100, P.R. Laws Ann. tit. 29 § 146 et seq. (1991); Puerto Rico Law 69, P.R. Laws Ann. tit. 29 § 1321 et seq. (1985); and Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31 § 5141 (1956). The defendants are Dr. José S. Belaval Health Center ("Center"), Dr. José S. Belaval Health Center Board, Inc. ("Board"), Gumersindo Colón ("Colón"), Vice-President of the Board, Cesar Rodríguez ("Rodríguez"), Executive Director of the Center, and the Municipality of San Juan ("MSJ"). Acevedo claims she was sexually harassed while serving as

Medical Director of the Center. She also claims that her employer, MSJ, transferred her from said center to another center because she refused to submit to sexual demands and harassment carried out by Co-defendants Colón and Rodríguez. See (Docket No. 1). Plaintiff alleges that she was subjected to sex discrimination by the MSJ through the actions of its agents, Colón and Rodríguez, in violation of Title VII and Puerto Rico Law 100 , 29 L.P.R.A. § 146 et seq. Plaintiffs' cause of action under Section 1983 against the MSJ was previously dismissed as time-barred. (Docket No. 18). In addition, the Title VII claim against Colón and Rodríguez, in their personal capacities as supervisor (employers), was previously dismissed. (Docket No. 19).

In January 1992, Co-plaintiff Acevedo was hired by the MSJ as a career employee as the Medical Director of the Center. Plaintiffs alleged that since January 1992, Co-defendant Rodríguez, as administrator and, later, Executive Director of the Center, made sexually offensive comments, constantly invited Acevedo out for a drink on Friday afternoons, and harassed her by requiring her to repeat unnecessary tasks which she had previously completed in proper manner and form.

On April 13, 1994, Co-defendant Colón asked Acevedo to prepare a report evaluating Rodríguez' work performance. On April 21, 1994, Colón called Acevedo to schedule a lunch conference with the purpose of discussing the report. They met for lunch and, afterwards, Acevedo alleges that she drove Colón to the Fishermen's Association dock. Once there, Colón invited her to come aboard his boat. Once onboard, Colón offered to show Acevedo the cabin section of the boat. When she entered that section, Colón allegedly jumped all over her, forcibly kissing and fondling her, and further attempting to undress her. Acevedo immediately pushed him away, left the boat and proceeded to her car.

2

At some point near the end of 1994, the MSJ sought a replacement for the Medical

Director of Dr. Gualberto Rabell Health Center. Acevedo was determined to be the best

candidate qualified to fill the position. See (Docket No. 34). She received a written notification

of the MSJ's decision on February 13, 1995, which also notified her that her transfer to that

position was going to be effective on March 1, 1995. See (Docket No. 42) and (Docket No. 45;

Exh. 3). Acevedo disagreed with the decision and on February 24, 1995, filed an administrative

claim before the Equal Employment and Labor Relations Office, Commission to Ventilate

Complaints and Personnel Affairs. She alleged that the transfer was motivated by

disagreements/controversies with the Health Department as to a request she made for federal

funds and, that she did not receive an explanation of the reason for the transfer she did not

request. She also alleged that due process was not followed and that her civil rights as a

permanent employee of the Municipality were violated. See (Docket No. 34; Exh. J).

In addition, Acevedo filed an injunction at the Superior Court of San Juan. The Superior

Court ordered a suspension of the notification on February 28, 1995. The MSJ was ordered to

inform the court of the facts which constituted and motivated the transfer of Acevedo. The

transfer was not effective until thirty (30) days after the MSJ filed its notification of the facts.

The MSJ, through a March 14, 1995 communication, notified Acevedo that her transfer was

going to be effective on April 15, 1995. See (Docket No. 45; Exh. 3). On April 4, 1995,

Acevedo filed a complaint with the Puerto Rico Labor Department's anti-discrimination unit

("ADU") based on the facts concerning Colón and Rodríguez's sexual harassment. (Docket No.

18). On that same date, she prepared and signed a Medical Director Report. In said report,

Acevedo spelled out her allegations of harassment, retaliation, and conspiracy to violate her civil

rights against Defendants. See (Docket No. 39). At that time, she alleged that the transfer

3

decision was taken because of her refusal to submit to Colón's and Rodríguez' sexual demands and their influence on the Municipal Health Director who made such decision. A Board meeting was held on April 20, 1995, during which Acevedo read aloud her April 4th report. MSJ representatives Carlos Marrero and Elba Flores were present at that meeting. A July 12, 1995, Superior Court order upheld the validity of Acevedo's transfer. See (Docket No. 45; Exh.3). Acevedo received her "right to sue letter" from the EEOC on June 14, 1996, and timely filed the present complaint on September 12, 1996. See (Docket No. 18).

MSJ contends that the complaint should be dismissed because Plaintiffs failed to state a cognizable claim against the MSJ pursuant to Title VII and Law 100. MSJ argues that the alleged harassers were not employees or agents of the MSJ and that the MSJ had no knowledge of the sexual harassment claims until after the transfer decision was made. MSJ alleges Acevedo's transfer was not an adverse employment decision which affected a tangible aspect of her employment.

## II. SUMMARY JUDGMENT STANDARD

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997) (citing Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)). A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . ." Fed.R.Civ.P. 56(c). "To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporation Insular, 111 F.3d 184, 187 (1st Cir. 1997). "In applying this formulation, a fact is 'material' if it

4

potentially affects the outcome of the case," <u>Vega-Rodríguez</u>, 110 F.3d at 178, and "'genuine' if

a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to

the party resisting summary judgment, could resolve the dispute in that party's favor." <u>Cortés-</u>

<u>Irizarry</u>, 111 F.3d at 187. "Speculation and surmise, even when coupled with effervescent

optimism that something definite will materialize further down the line, are impuissant in the

face of a properly documented summary judgment motion." <u>Ayala-Gerena v. Bristol Myers-</u>

<u>Squibb Co.</u>, 95 F.3d 86, 95 (1st Cir. 1996).

　　　"On issues where the nonmovant bears the ultimate burden of proof at trial, he may not

defeat a motion for summary judgment by relying on evidence that is 'merely colorable' or 'not

significantly probative.'" <u>Pagano v. Frank</u>, 983 F.2d 343, 347 (1st Cir. 1993) (quoting <u>Anderson</u>

<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510 (1986)). The nonmovant

must "present definite, competent evidence to rebut the motion." <u>Mesnick v. General Electric</u>

<u>Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991), <u>cert. denied</u>, 504 U.S. 985 (1992). "The court may

consider any material that would be admissible or usable at trial." <u>See</u> 10A CHARLES ALAN

WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2721, at 361 (3d ed. 1998). "But the

court should do no more than this in reviewing the quality of the evidence. Most critically, it

must never 'weigh the evidence and determine the truth of the matter....'" <u>Lipsett v. University</u>

<u>of P.R.</u>, 864 F.2d 881, 895 (1st Cir. 1988) (quoting <u>Anderson</u>, 477 U.S. at 249, 106 S.Ct. at

2511). The court should "'look at the record ... in the light most favorable to ... the party

opposing ... the motion' ... [and] indulge all inferences favorable to the party opposing the

motion." <u>Hahn v. Sargent</u>, 523 F.2d 461, 464 (1st Cir. 1975) (quoting <u>Poller v. Columbia</u>

<u>Broadcasting System</u>, 368 U.S. 464, 82 S.Ct. 486 (1962)) (citations omitted). "If, after this

canvassing of the material presented, the district court finds that some genuine factual issue

AO 72A
(Rev.8/82)

remains in the case, whose resolution one way or another could affect its outcome, the court

must deny the motion." Lipsett, 864 F.2d at 895 (citing Anderson, 477 U.S. at 242, 106 S.Ct. at

2505). "Summary judgment may be appropriate if the nonmoving party rests merely upon

conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v.

R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

"We believe that summary judgment procedures should be used sparingly . . . where the

issues of motive and intent play leading roles . . . It is only when the witnesses are present and

subject to cross-examination that their credibility and the weight to be given their testimony can

be appraised.  Trial by affidavit is no substitute for trial by jury which so long has been the

hallmark of 'even handed justice.'" Poller v. Columbia Broad. Sys., 368 U.S. 470, 473, 82 S.Ct.

486, 491 (1962); Cf Pullman-Standard v. Swint, 456 U.S. 273, 288-90, 102 S.Ct. 1781, 1790-

1791 (1982) (discriminatory intent is a factual matter for the trier of fact); see also William Coll.

v. P.B. Diagnostic Sys., Inc., 50 F.3d 1115, 1121 (1st Cir. 1995); Oliver v. Digital Equip. Corp.,

846 F.2d 103, 107 (1st Cir. 1988);  Lipsett, 864 F.2d at 895.  "Under such circumstances, jury

judgments about credibility are typically thought to be of special importance." Stepanischen v.

Merchants Despatch Transp. Corp., 722 F.2d 922, 928 ( 1st Cir. 1983).  Furthermore, "[n]o

credibility assessment may be resolved in favor of the party seeking summary judgment."

Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995) (citations omitted).  In a

discriminatory discharge case, particularly, a Plaintiff "will rarely, if ever be able to produce a

'smoking gun' that provides direct, subjective evidence of an employer's [animus].  Rather, a

plaintiff must try to convince the fact-finder to draw an inference from a broad array of

circumstantial and often conflicting evidence...." Stepanischen, 722 F.2d at 929.  However,

"even in cases where elusive concepts such as motive or intent are at issue, summary judgment

6

AO 72A
(Rev.8/82)

may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable

inferences, and  unsupported speculation." Ayala-Gerena, 95 F.3d at 95.  "But when the plaintiff

can point to specific facts detailed in affidavits and depositions--that is, names, dates, incidents,

and supporting testimony--giving rise to an inference of discriminatory animus, the dispute must

be subjected to the factfinding process."    Lipsett, 864 F.2d at 895.

### III.  DISCUSSION

### A. Title VII;  Introduction

Title VII prohibits discrimination in employment as to hiring, firing, compensation,

terms, conditions and privileges of employment on the basis of race, color, religion, sex or

national origin, imposing liability on the employer for said acts.

Section 703 (a) of Title VII states:

> " It shall be unlawful employment practice for an employer to fail
> or refuse to hire or to discharge any individual with respect to his
> compensation, terms, conditions or privileges of employment,
> because of such individual's race, color, religion, sex or national
> origin."

42 USC § 2000e-2(a)(1).  Sexual harassment is a form of sex discrimination which Title VII

prohibits.  Meritor Savings Bank v. Vinson, 477 US 57, 65 (1986), 106 S.Ct. 2399; Morrison v.

Carleton Woolen Mills, Inc., 108 F.3d 429, 436-37 (1st Cir. 1997); Lipsett, 864 F.2d at 897.

Courts have recognized that sexual harassment can take place in two related ways; " the

first, *quid pro quo* harassment, occurs when a supervisor conditions the granting of an economic

or other job benefit upon the receipt of sexual favors from a subordinate, or punishes that

subordinate for refusing to comply." Lipsett, 864 F.2d at 897. The second type of sexual

harassment, hostile work environment, "occurs when one or more supervisors or co-workers

create an atmosphere so infused with hostility towards members of one sex that they alter the

7

conditions of employment for them." Id.  See also Meritor, 477 U.S. at 65, 106 S.Ct. at 2399.

The EEOC guidelines state that "unwelcome sexual advances, requests for sexual favors, and

other verbal or physical conduct of a sexual nature constitute sexual harassment when (1)

submission to such conduct is made either explicitly or implicitly a term or condition of an

individual's employment, [or] submission to or rejection of such conduct by an individual is

used as the basis for employment decisions affecting such individual ['quid pro quo'], or (2)

such conduct has the purpose or effect of unreasonably interfering with an individual's work

performance or creating an intimidating, hostile, or offensive working environment ['hostile

work environment']."  29 CFR § 1604.11(a) (1999); See also Ruiz v. Caribbean Restaurants,

Inc., ___ F.Supp. 2d___, 1999 WL 459968 (D.P.R 1999).  Sexual harassment allegations must

be analyzed in light of the record as a whole and the totality of circumstances; such as the nature

of the sexual advances and the context in which the alleged incidents occurred.  Lipsett, 864

F.2d 881.

**B.  Title VII; "Known or should have known"; Adverse Employment Action**

Title VII provides redress against employers who discriminate against individuals in the

workplace.  The term "employer" under Title VII is defined "as a person engaged in an industry

affecting commerce who has fifteen (15) or more employees for each working day and any agent

of such person." 42 U.S.C. 2000e.

Co-plaintiff Acevedo alleges that although Co-defendants Colón and Rodríguez did not

get paid, hired, or fired by the MSJ, they were in fact agents for the MSJ and as such the MSJ

should be held liable for their sexual harassment acts.  On the other hand, MSJ contends that the

harassers were not employees of the MSJ and that they were not working under the supervision

or control of the MSJ. For the reasons succeeding below, the Court finds that making this

AO 72A
(Rev 8/82)

distinction is irrelevant for the MSJ did not have knowledge of the sexual harassment claims made by Acevedo at the time the Municipal Health Director decided to transfer her to the Dr. Gualberto Rabell Health Center.

Federal law, based on general common law principles of agency, governs employer's vicarious liability under Title VII for sexual harassment by supervisors. Burlington Industries Inc. v. Ellerth, 118 S.Ct. 2257 (1998). The Supreme Court in Burlington analyzed the central principles of agency law: "A master is subject to liability for the torts of his servants committed while acting in the scope of their employment." Section 219(1) of the Restatement. However, "the scope of employment does not define the only basis for employer liability under agency principles." Burlington 118 S.Ct. at 2267. The Supreme Court stated that such principles may impose liability on employers even when employees commit torts outside the scope of employment. Id. Under Section 219(2), which provides exceptions that act to impose employer liability for acts of its employees outside the scope of employment, provides in pertinent part that "a master is not subject to liability for the torts of his servants acting outside the scope of their employment unless: .....b) the master was negligent or reckless..." Section 219(2)(b). Accordingly, the Supreme Court held that although sexual harassment is outside the scope of employment, because the conduct was for personal motives, an employer can be liable, nonetheless, where its own negligence is the cause of the harassment. Burlington, 524 U.S. at ____, 118 S.Ct. 2273. That is, an employer is negligent with respect to sexual harassment acts on behalf of its agents or supervisory employees if it knew or should have known about the conduct and failed to stop it. Id. "Negligence sets the minimum standard for employer liability." Id at 2267.

With respect to non-employees, the EEOC's "Guidelines on Sex Discrimination" state:

> "An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. An employer will only be held liable for the actions of a non-employee if the employer had or should have had knowledge of the conduct and failed to take immediate and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees."

29 C.F.R. § 1604.11(e). Thus, MSJ can only be held liable if it had knowledge of the sexual harassment by Colón and Rodríguez and failed to rectify the situation. The employer could be held liable for the actions of non-employees if it had knowledge of the conduct and did not promptly take corrective action. See McGuire v. Commonwealth of Virginia, 988 F.Supp. 980, 988 (W.D.Va. 1997); see also generally Rodríguez-Hernández v. Miranda-Vélez, 132 F.3d. 848, 854-855 (1st Cir. 1998).

The Court considers that it is important to illustrate a chronology of facts that took place during Acevedo's employment with the MSJ at the Belaval Health Center in order to establish whether some theory of sexual harassment can be proven and whether the MSJ should be held responsible for the acts of Colón and Rodríguez. The following facts are crucial to determine if there was a discriminatory animus behind the decision to transfer Acevedo from the Belaval to the Rabell Health Center and to determine if, in fact, Acevedo suffered a tangible loss due to that employment decision.

The decision to transfer Acevedo was originally made on February 8, 1995, and she received notice of the decision on February 13, 1995. Plaintiff filed a complaint at the Puerto Rico Labor Department's anti-discrimination unit ("ADU") on April 4, 1995, naming as defendants MSJ, Colón, and Rodríguez for her sexual harassment claims. On that same date, she prepared a Medical Director Report in which she complained about Colón and Rodríguez

10

sexually harassing her and conspiring to violate her civil rights. Acevedo alleged that the reasons for her transfer to the Rabell Center were due to her refusal to submit to Colón's and Rodríguez' sexual demands and their influence on the Medical Director who made the decision, Dr. Javier Morales.

Acevedo read her report out loud at an April 20th, 1995, Board meeting. MSJ representatives, Carlos Marrero and Elba Flores, were present at this meeting. Because of the presence of these two persons at said meeting, Acevedo contends that the MSJ had knowledge or should have had knowledge of the sex discrimination and sexual harassment that she was subjected to, and thus should be held liable to her for Colón's and Rodríguez' acts. See (Docket No. 39). Acevedo admits that this was in fact the specific date the MSJ first found out about her sexual harassment claims. See (Docket No. 45); (Docket No. 39; Exh. 1, para. 17). Municipal representative Elba Flores declared under penalty of perjury that "I knew Dr. Acevedo had challenged her transfer in the courts some time before the Board meeting, alleging that the transfer was invalid, but she had never mentioned any allegation of sexual harassment. During the meeting of April 20th, Dr. Acevedo read out loud a document in which she mentioned the alleged harassment. Before that occasion, I had never received any information whatsoever concerning those allegations. The transfer was decided before the Municipality or any of its functionaries heard about the alleged sexual harassment." See (Docket No. 42; Exh. 1).

The record demonstrates that at the time the MSJ originally made the transfer decision and informed Acevedo of the decision, the MSJ was not even aware of any sexual harassment claim made by her. Even if the Court considers that the MSJ knew about the sexual harassment on the date Acevedo filed her claim at the ADU, MSJ still did not know of such claim at the

11

time the Municipal Health Director decided to transfer her. Prior to her ADU filing, Acevedo did not allege any sexual harassment in any of the proceedings.

## C. Title VII; Sexual Harassment Theories

In light of the sexual harassment theories that can be established under Title VII, the Court will proceed to illustrate the distinctions between each of them and the proof required. The Supreme Court has set forth the standard of proof to be applied for claims under Title VII, where a plaintiff alleges that a discriminatory animus, on behalf of the employer, is the sole motive for an adverse employment action. McDonnell Douglas v. Green, 411 U.S. 792, 802-805, 93 S.Ct. 1817, 1824-1826 (1973). Where direct evidence of discriminatory intent is lacking, courts will utilize the McDonnell Douglas burden-shifting framework. A plaintiff must establish a prima facie case of discrimination. This burden, if met, shifts the burden of production to the defendant, who must then articulate a legitimate, nondiscriminatory reason for the adverse employment action. Once the defendant has done so, the plaintiff then has an opportunity to demonstrate that the employer's reason was not the true reason but in fact a mere pretext. McDonnell Douglas v. Green, 411 U.S. at 802-805, 93 S.Ct. at 1824-1826; Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981); Fennell v. First Step Designs, Ltd., 83 F.3d. 526, 535 ( 1st Cir. 1996). "The burden of persuasion on the ultimate issue  of intent remains with the plaintiff at all times." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-12, 113 S.Ct. 2742, 2747-750 (1993); Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 31 (1st Cir. 1990).

### 1. Quid Pro Quo

"Quid pro quo harassment, occurs when a supervisor conditions the granting of an economic or other job benefit upon the receipt of sexual favors from subordinate, or punishes

12

that subordinate for refusing to comply." Ruiz v. Caribbean Restaurants, Inc., 1999 WL 459968, at *6; Lipsett, 864 F.2d. at 897. "The gravamen of a quid pro quo claim is that a tangible job benefit or privilege is conditioned on an employee's submission to sexual black-mail and that adverse consequences follow from the employee's refusal." Gary v. Long, 59 F.3d 1391, 1395 (D.C. Cir. 1995). Quid pro quo harassment exists where a victim's response to unwelcome sexual advances affects tangible aspects of his/her compensation, terms, conditions, or privileges of employment. Chamberlin v. 101 Realty, Inc., 915 F.2d. 777, 782 (1st Cir. 1990), Gary, 59 F.3d. at 1396, Hicks v. Gates Rubber, 833 F.2d. 1406, 1414 (10th Cir. 1987). "In rebuttal, the defendant may show that the behavior complained of either did not take place or that it did not affect a tangible aspect of the plaintiff's employment...". Ruiz, 1999 WL 459968, at *6; Chamberlin, 915 F.2d. at 783 (quoting Lipsett, 864 F.2d. at 897).

Although not specifically alleged in her complaint, Acevedo asserts that co-defendants Colón's and Rodríguez' conduct gave rise to a Title VII claim under a quid pro quo theory of sexual harassment. Acevedo argues that the MSJ transferred her from her position as Medical Director at the Belaval Center to the same position at the Rabell Center because she refused to submit to to the sexual demands of Colón and Rodríguez. MSJ counters that Colón's and Rodríguez'conduct cannot be properly characterized as quid pro quo because Colón and Rodríguez lacked authority to hire or suspend Acevedo. In fact, they were not municipal employees as Acevedo clearly was. Because Acevedo has not shown the Court any direct evidence of discriminatory intent, the Court proceeds with the McDonnell Douglas burden-shifting framework.

For Acevedo to establish a prima facie quid pro quo harassment claim she must show that: "1) she is a member of a protected group; 2) sexual advances towards her were

13

unwelcomed; 3) the harassment was sexually motivated; 4) the employer's reaction to the supervisor's advances affected a tangible aspect of her employment; and 5) respondeat superior liability has been established.." Ruiz, 1999 WL 459968, at *7 (quoting Chamberlin, 915 F.2d. at 783).

The Court does not linger on the first three elements and assumes they are met. The fourth element requires that "the acceptance or rejection of the harassment by an employee must be an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment." Henson, 682 F.2d. at 909; Jones, 793 F.2d. at 722; Chamberlin, 915 F.2d. at 784. "Plaintiff-employee must establish that she was denied an economic benefit either because of gender or because a sexual advance was made by a supervisor and rejected by her." Kotcher v. Rosa and Sullivan Appliance Ctr, Inc., 957 F.2d. 59,62 (2nd Cir. 1992) (quoting Meritor, 477 U.S. at 64-65, 106 S.Ct. at 2404-2405).

No evidence in the record shows that Acevedo's acceptance of Colón's and Rodríguez' sexual advances was a condition for her staying at the position of Medical Director at the Belaval Center. Consequently, no tangible job benefit or privilege was conditioned by the MSJ on her submission to such sexual demands. Neither Rodríguez nor Colón had any power or authority on Acevedo's employment status and they were not amongst the decision-making or policy-making hierarchy under the MSJ. On the contrary, the evidence shows that Acevedo's transfer and employment status was under the control of the MSJ. See (Docket No. 39). The record is devoid of any evidence that MSJ, in any way, decided to transfer Acevedo back on February, 1995, because she rejected Colón's and Rodríguez' sexual advances. Acevedo admits the MSJ did not even know of any sexual claim until April, 1995. No knowledge of Acevedo's sexual harassment can be attributed to the person in charge of making plaintiff's employment

AO 72A
(Rev.8/82)

decisions. Therefore, due to the lack of evidence in the record that the MSJ had knowledge or should have known of the sexual harassment, the Court holds, that after granting to Acevedo all reasonable inferences that can be deduced from the evidence, Acevedo has failed to show that a genuine issue of material fact exists regarding her reaction to Colón's and Rodríguez' sexual advances that could have affected tangible aspects of her compensation, terms, conditions or privileges of employment.

Because there was no tangible aspect of plaintiff's employment affected by her rejection to co-defendants' sexual harassment, the Court holds that Acevedo did not satisfy the fourth requirement of the quid pro quo prima facie case. There is no cause of action for quid pro quo harassment where the record is devoid of any evidence tending to demonstrate that plaintiff was denied a job benefit or suffered a job detriment as a result of her failure to engage in the activities suggested by co-defendants. Highlander v. K.F.C. Nat'l Management Co., 805 F.2d. 644, 649 (6th Cir. 1986). Because the fourth requirement has not been met, MSJ's summary judgment is GRANTED, and the Court has no obligation to examine whether a respondeat superior relationship existed. Wherefore, the quid pro quo cause of action is hereby **DISMISSED**.

### 2. Retaliation

Plaintiff asserts that co-defendant MSJ retaliatory transfer violated Title VII. Title VII prohibits "an employer from discriminating against an employee because he has opposed the employer's alleged unlawful employment practice, including filing of a sexual harassment complaints with the EEOC." Wyatt v. City of Boston, 35 F.3d. 13, 15-16 (1st Cir. 1994); Hernández v. Wangen, 938 F.Supp. 1052, 1061 (D. Puerto Rico 1996). The burden-shifting analysis set forth in McDonnell Douglas, and its progeny applies to Title VII retaliation cases,

15

where, as in this case, and as in retaliation cases generally, there is no direct evidence of the defendant's retaliatory animus. Fennell, 83 F.3d. at 535, Hernández, 938 F.Supp. at 1061, McGuire v. Comm. of V.A., 988 F.Supp. 980 (W.D.Va. 1997), Ross v. Communications Satellite Corp., 759 F.2d. 355 (4th Cir. 1985).

Plaintiff must establish a prima facie case of retaliation by demonstrating that: "1) she engaged in a protected activity which participation or opposition was known by the employer; 2) the employer took an adverse employment action against her; and 3) a causal connection exists between the protected activity and the adverse action." Fennell, 83 F.3d. at 535; Ruiz, 1999 WL 459968, *16; Petitti, 909 F.2d. at 33; Hoeppner v. Crotched Mountain Rehabilitation Center, 31 F.3d. 9,14 (1st Cir. 1994).

Assuming plaintiff's allegations are true and drawing all reasonable inferences from her assertions in her favor, the Court finds that Acevedo did not establish a prima facie case of retaliatory transfer. Hernández, 938 F.Supp. at 1061.

The first requirement "queries whether plaintiff reported the alleged sexual harassment." Ruiz, 1999 WL 459968, at *17. Acevedo filed a sexual harassment claim against defendants on April 4, 1995, at the ADU. No evidence has been proffered which points to Acevedo presenting any sexual harassment claim before said date. Nor did Acevedo point to any evidence indicating that the MSJ, or the administrative forums designated to address sexual harassment complaints, knew or had reason to know of the alleged transgression by Colón and Rodríguez before then.

Instead, Acevedo conceded that the MSJ first found out about her sexual harassment claims on April 20, 1995, through the participation of the municipal representatives, Carlos Marrero Plaud and Elba Flores, at the Board meeting. See (Docket No. 45). This admission destroys the first element of plaintiffs' prima facie case. MSJ lacked actual and constructive

16

knowledge of Acevedo's report of sexual harassment at the time the Municipal Health Director

decided to transfer her back on February, 1995. Therefore, a disadvantaging employment action

could not have been taken against plaintiff because of her sexual harassment charges against co-

defendants Colón, Rodríguez, and the MSJ. Furthermore, there was no causal connection

between the protected activity and the employment action for the employment action was taken

way before plaintiff engaged in protected activity.

This ends the Court's retaliation inquiry. Giving all reasonable inferences to Acevedo,

the Court holds that, as a matter of law, MSJ did not transfer Acevedo in retaliation for a sexual

harassment complaint. Thus, summary judgment is **GRANTED** and this retaliation claim is

**DISMISSED**.

### 3. Hostile Work Environment

Plaintiffs contend that Colón, Rodríguez and the MSJ, Acevedo's employer, subjected

Acevedo to a hostile working environment in violation of Title VII. Plaintiffs filed an ADU

and EEOC complaint and, thereafter, the instant complaint.

MSJ argues: i) plaintiffs are unable to prove that the alleged conduct was pervasive and

severe enough to create a hostile work environment; see Lipsett, 864 F.2d. at 897 (not all

conduct that may be characterized as harassment rises to the level of an actionable claim) and ii)

the alleged hostile environment cannot be imputed to the MSJ because Colón and Rodríguez

were not municipal employees and the MSJ did not have knowledge of the alleged conduct.

"Hostile work environment sexual harassment occurs when an employer's conduct has

the purpose or effect of unreasonably interfering with individual's work performance or creating

an intimidating, hostile or offensive working environment." Meritor, 477 U.S. at 65, 106 S.Ct. at

2404; Tomka v. Seller Corp., 66 F.3d 1295, 1305 (2nd Cir. 1995). An abusive work

17

environment is created "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 20, 114 S.Ct. 367, 370 (1993) (quoting Meritor, 477 U.S. at 65, 67, 106 S.Ct. at 2404, 2405). "Whether a workplace should be viewed as hostile or abusive- from both a reasonable person's standpoint as well as the victim's subjective perception- can only be determine by considering the totality of the circumstances." Tomka, 66 F.3d. at 1305 (following Harris, 510 U.S. at 23 , 114 S.Ct. at 371). These circumstances include: "1) the frequency of the alleged discriminatory conduct; 2) the increasing severity of the alleged discriminatory conduct; 3) whether it is physically threatening or humiliating, or merely offensive, and; 4) whether it unreasonably interferes with the employee's work performance." Harris, 510 U.S.at 24, 114 S.Ct. at 371; Hernández, 938 F.Supp. at 1058. Once plaintiff demonstrates "that she was subjected to a hostile work environment, she must establish that the conduct which created the hostile situation should be imputed to the employer." Meritor, 477 U.S. at 70-71, 106 S.Ct. at 2410-11; Kotcher, 957 F.2d. at 63; Tomka, 66 F.3d. at 1305.

Even if, *arguendo*, the Court assumes a hostile work environment claim did take place, the question remains, however, whether the MSJ may be held responsible under Title VII for the conduct perpetrated by Colón and Rodríguez. As illustrated in our previous discussion, if the Court holds that Colón and Rodríguez were acting as non-employees, then the MSJ's liability will turn on whether MSJ knew or should have known of the alleged conduct. See 29 CFR § 1604.11 (e). The Court concluded above that MSJ did not know of the harassing conduct, because the MSJ was not notified of it until April 20, 1995. By that time, Acevedo's transfer had become effective and she no longer working at Belaval.

18

Therefore, even if the Court finds that Colón and Rodríguez were acting as agents/supervisors of the MSJ, then the MSJ cannot be held liable because the record is devoid of any evidence indicating, after all reasonable inferences are afforded to plaintiff, that the MSJ knew or should have known of the harassing behavior. See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, ____, 118 S.Ct. 2257, 2270 (1998) ( "Negligence sets a minimum standard for employer liability under Title VII." Id at 2267.) and Faragher v.City of Boca Raton, 524 U.S. 775,___, 118 S.Ct. 2292, 2293 (1998)(emphasis added). See also Ruiz, 1999 WL 459968, at *20.

The Court holds that Sec. 219(2)(b) is persuasive and the standard controls MSJ's liability for the sexual harassment acts of Colón and Rodríguez. Therefore, in order to hold MSJ responsible due to its own negligence, Acevedo must: 1) prove that a hostile work environment took place, and 2) establish that the MSJ knew or should have known of the sexual conduct and failed to take immediate and appropriate corrective action.  For effects of the instant case, even if a hostile work environment was present, the Court has already stated that the MSJ did not know of the behavioral misconduct.  Because the minimum standard for Title VII employer's liability based on its own negligence cannot be established, and because no discriminatory animus in the MSJ's decisional calculus to transfer Acevedo can be adduced from the record, the Court holds no genuine issue of material fact exists which requires a jury to decide.  Thus, Plaintiffs' Title VII claim against the MSJ must be **DISMISSED**.

## V. CONCLUSION

In sum, the evidence in the record militates a finding by the Court that MSJ neither knew nor should have known of the alleged sexual harassment of Acevedo until after her transfer was effective.  Therefore, the Court holds MSJ, as Acevedo's employer, can not be held liable and

19

the Title VII cause of action must fall.  The dismissal of Plaintiffs' sole remaining federal claim leaves only Plaintiffs' claims under Puerto Rico Law.  Pursuant to 28 U.S.C. § 1376(c) and United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966), the Court declines to exercise supplemental jurisdiction over Plaintiffs' Commonwealth claims against the Defendants.  See Rodriguez v. Doral Mortgage Corp, 57 F.3d 1168, 1177 (1st Cir. 1995).  "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplement state-law claims."  Id.  (citations omitted).

WHEREFORE, the summary judgment motion (Docket No. 34) is hereby **GRANTED**, and the Plaintiffs' federal causes of action are **DISMISSED WITH PREJUDICE** and Plaintiffs' pending state-law claims are hereby **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.
In San Juan, Puerto Rico, this 7th day of September, 1999.

**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**

P:\FINALORD ERS\96-2102 MSJ

20

AO 72A
(Rev.8/82)